CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED for RKo

NOV 03 2014

JULIA C. DUDLEY, CLERK
BY: HMcDonald
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| GARY WALL, )  | Civil Action No. 7:13-cv-00587 |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| SARA LOONEY, et al., ) | By: Hon. Jackson L. Kiser |
| Defendants. ) | Senior United States District Judge |

Gary Wall, a Virginia inmate proceeding pro se, filed a second amended complaint, pursuant to 42 U.S.C. § 1983 and Virginia law. Plaintiff names as defendants H. Clarke, the Director of the Virginia Department of Corrections ("VDOC"); VDOC Ombudsmen G. Robinson and G. Hinkle; R. Mathena, Warden of the Red Onion State Prison ("ROSP"); J. McQueen, the ROSP Institutional Investigator; ROSP Lt. D. Still; and ROSP K-9 Handler S. Looney. Defendants filed a motion for summary judgment, and Plaintiff responded, making the matter ripe for disposition. After reviewing the record, I deny summary judgment against Officer Looney and grant summary judgment as to the other defendants.

I.

Inmate A. Ingram attacked Plaintiff while they and approximately twenty other inmates were on the ROSP prison yard.[1] Plaintiff and Ingram fell to the ground, and to protect himself, Plaintiff kept Ingram in a bear hug as they rolled around. Officer Looney and her K-9, Epo, approached Ingram and Plaintiff and thrice warned that Epo would be released and ordered them to stop fighting.[2] Neither Plaintiff nor Ingram disengaged, even after other officers used

---

[1] ROSP is a "Level-S," (ie., segregated) correctional facility that houses offenders who are classified as high security risks and who are some of the most violent offenders incarcerated in the VDOC. Many offenders incarcerated at ROSP segregation housing because they are disruptive, assaultive, have severe behavioral problems, demonstrate predatory-type behaviors, and are escape risks. ROSP generally provides maximum security supervision and a high level of physical restraint to maintain control, prevent escapes, minimize risk of staff and inmate injury, and maintain orderly institutional operations.

[2] Correctional staff prevented one of the other inmates on the yard from joining the fight, and all other

Oleoresin Capsicum ("OC") spray.[3] Officer Looney avers that Epo bit Plaintiff's left calf while Plaintiff and Ingram remained clasped and tussling on the ground. Once another K-9 arrived and bit Ingram, Plaintiff and Ingram released each other and separated.

The parties disagree what happened once the inmates separated. Officer Looney avers that she gave Plaintiff a direct order to lie on his stomach with his hands out and that Plaintiff, instead, lay on his side and began to kick Epo in the head to make the dog release his left calf. Officer Looney avers she then gave Plaintiff several orders both to stop kicking Epo and to lie on his stomach with his hands out. Officer Looney avers that she ordered Epo to release Plaintiff's left calf once Plaintiff complied by not kicking Epo and lying on his stomach.[4]

In contrast, Plaintiff avers that as soon as he and Ingram separated, he immediately rolled onto his stomach with his hands out even though Officer Looney never ordered or warned Plaintiff about anything. Plaintiff avers that Epo tore into his left calf while he was already peaceably compliant and lying stomach-down on the ground, which differs from Officer Looney's allegation that Epo bit Plaintiff while he was tussling with Ingram. Despite his compliant and submissive posture, Plaintiff avers that Officer Looney commanded Epo to "Get him, bite his ass!"

The bite wound to Plaintiff's left calf was described as "a larger wound with large vein exposed but the vein appeared to be intact"; "a large area of separated tissue planes that is still open just above the fascial plane of muscle"; and "[o]n the lateral calf there was a small opening

---

inmates obeyed orders to lay stomach down on the ground while officers responded to the incident.

[3] OC spray is a chemical agent similar to what is commonly known as pepper spray or mace and irritates a person's eyes, throat, and nose. See, e.g., Park v. Shiflett, 250 F.3d 843, 849 (describing the physiological effects of OC spray).

[4] Defendants concede that they do not know when Epo injured Plaintiff's left calf: either when Plaintiff was embracing Ingram or after Plaintiff had separated from Ingram.

2

with larger area underneath that has separation of tissue planes." Ex. V ¶ 8, Enclosure A. Plaintiff had rated his pain level at 8 out of 10.

Defendants provided a copy of the video recording of the incident from a security camera. Once the camera zooms in on the fight, Plaintiff and Ingram can be seen clasped together and tussling on the ground, with neither inmate being able to overpower the other or release himself from the other's grasp. The video reveals that Epo kept a sustained bite on Plaintiff's left calf while the inmates were still together and while Plaintiff rolled out of the fight onto his right side and proceeded immediately to lie on his stomach directly in front of Officer Looney and Epo. Plaintiff appears to lie as peacefully as possible after being rolled from the fight while Epo maintained his bite. Epo continued to bite and tug on Plaintiff's calf for nearly thirty seconds after Plaintiff had lain on his stomach. The video shows that two correctional officers and one staffer are standing next to Officer Looney, Epo, and Plaintiff during the time Plaintiff allegedly kicked Epo in the head, but they do not attempt to restrain Plaintiff. Although the video cannot reveal when Plaintiff sustained the injury to his calf, the video could support Plaintiff's allegation that he did not kick Epo in the head.

## II.

A party is entitled to summary judgment if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a); see Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991) (recognizing a party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant). The moving party has the burden of showing – "that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the movant satisfies this

3

burden, then the non-movant must set forth specific, admissible facts that demonstrate the existence of a genuine issue of fact for trial. Id. at 322-23. "Material facts" are those facts necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. Id. A court may not resolve disputed facts, weigh the evidence, or make determinations of credibility. Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995); Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986). Instead, a court accepts as true the evidence of the non-moving party and resolves all internal conflicts and inferences in the non-moving party's favor. Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979).

### III.

Defendants argue that the federal claims for damages asserted against them in their individual capacities are barred by the doctrine of qualified immunity.[5] Qualified immunity permits "government officials performing discretionary functions . . . [to be] shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). I find that all defendants but Officer Looney are entitled to qualified immunity due to Plaintiff's failure to establish a constitutional violation, but disputes of material fact preclude awarding qualified immunity to Officer Looney. See Gray v. Spillman, 925 F.2d

---

[5] The Eleventh Amendment bars claims for damages against Defendants in their official capacities. Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989); Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 280 (1977); Gray v. Laws, 51 F.3d 426, 430 (4th Cir. 1995).

4

90, 95 (4th Cir. 1991) (finding summary judgment precluded where resolution of claim depends on credibility determination).

A. Officer Looney

A prisoner alleging excessive force in violation of the Eighth Amendment must show that a defendant "inflicted unnecessary and wanton pain and suffering." Whitley v. Albers, 475 U.S. 312, 320 (1986); see Wilson v. Seiter, 501 U.S. 294, 298 (1991) (holding that an Eighth Amendment claim for excessive force requires an objective deprivation of a basic human need and that prison officials subjectively acted with a sufficiently culpable state of mind). Therefore, the proper inquiry is whether the force applied was "in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Whitley, 475 U.S. at 320-21. The subjective component encompasses such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, the extent of the threat to the safety of staff and inmates reasonably perceived by responsible officials, and any efforts made to temper the severity of a forceful response. Id. at 321. Courts recognize that corrections officials must act "in haste, under pressure, and frequently without the luxury of a second chance." Whitley, 475 U.S. at 320. Consequently, the court must give prison officials "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Hudson v. McMillian, 503 U.S. 1, 7 (1992); see, e.g., Wilkins v. Gaddy, 559 U.S. 34, 38 (2010).

After considering the Whitley factors, I find disputes of material facts require a jury to determine whether Officer Looney used Epo in a good faith effort to restore discipline or maliciously and sadistically for the very purpose of causing harm. If Plaintiff's testimony is to

5

be believed, Plaintiff felt Epo tear into his calf while he was compliant, lying face down, and no threat to anyone after the inmates had been separated. See Iko v. Shreve, 535 F.3d 225, 240 (4th Cir. 2008) (finding that evidence could show a correctional officer's use of pepper spray violated the Eighth Amendment when, inter alia, there was little reasonable threat from the inmate who was not confrontational and had complied with an order to lay on the floor). Viewed in a light most favorable to Plaintiff, the video supports Plaintiff's allegation that he did not kick Epo and had lain on his stomach peacefully as soon as practical upon being dragged from Ingram's grasp.[6] While there was a need for the application of force to separate Plaintiff and Ingram, there does not appear to be a reasonable need for the K-9 to keep biting Plaintiff's calf and tearing his flesh for nearly thirty seconds after he was released from Ingram, had lain peacefully on the ground, and was surrounded and watched by correctional staff. If a jury believes Plaintiff's version of events, both the subjective and the objective prongs of an excessive force claim would be met, allowing the jury to return a verdict in his favor.

Although I give deference to correctional officers who make difficult decisions in threatening situations, a jury could determine that yelling, "Get him, bite his ass!" and using a K-9 to bite a peaceable inmate who is no longer engaged in a fight for nearly thirty seconds constitutes a malicious and sadistic use of force. See, e.g., Mann v. Failey, No. 13-6446, slip op. at 17 (4th Cir. July 17, 2014) (reversing summary judgment in favor of correctional officers because "it is plainly the case that a jury could find that the officers . . . continued to apply force against [the inmate] well after he had ceased his resistance"). But if a jury believes Officer Looney's version of events, the jury could return a verdict in her favor for a good-faith effort

---

[6] The video recording does not so "blatantly contradict" either Plaintiff's or Officer Looney's version of events as to discredit their testimony. See, e.g., Scott v. Harris, 550 U.S. 372, 380 (2007).

6

made in haste and under pressure to restore discipline, ie., Officer Looney allowed Epo to bite Plaintiff until Plaintiff stopped kicking Epo in the head. Accordingly, Defendants' motion for summary judgment is denied for this claim.

B. Warden Mathena

Plaintiff argues that Warden Mathena was deliberately indifferent to the substantial risk that K-9 handlers at ROSP will harm inmates, in violation of the Eighth Amendment. The Eighth Amendment protects inmates from cruel and unusual living conditions. Helling v. McKinney, 509 U.S. 25, 31 (1993). In order to make out a prima facie case that prison conditions violate the Eighth Amendment, a plaintiff must show both (1) an objective, "sufficiently-serious" deprivation of a basic human need, and (2) a prison official's subjective, deliberate indifference to that deprivation. Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993). Deliberate indifference requires that a state actor was personally aware of facts indicating a substantial risk of serious harm and that the actor actually recognized the existence of such a risk. Farmer v. Brennan, 511 U.S. 825, 838 (1994). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). "A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position." Id. at 851-52. "[T]he evidence must show that the official in question subjectively recognized that his actions were 'inappropriate in light of that risk.'" Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 303 (4th Cir. 2004). Mere negligence does not qualify as deliberate indifference. Davidson v. Cannon, 474 U.S. 344, 347 (1986); Grayson, 195 F.3d at 695.

7

Plaintiff fails to establish that Warden Mathena was deliberately indifferent to a substantial risk of harm caused by the excessive use of force by ROSP's K-9 handlers. Plaintiff fails to demonstrate that Warden Mathena knows of or established a policy or custom of ROSP officers using K-9s other than for justifiable self-defense, protection of others, protection of property, prevention of escapes, and to maintain or regain control. K-9s may be lawfully used as a good-faith effort to maintain or restore discipline, and there is no evidence in the record that the presence of trained dogs at ROSP poses an unreasonable risk to the constitutional rights or physical well-being of compliant inmates or poses any risk greater than other legitimate tools of prison security, such as firearms, OC spray, or steel restraints. See Stanley v. Hejirika, 134 F.3d 629, 634 (4th Cir. 1998) (noting prison administrators must be accorded wide-ranging deference to design and implement policies and practices needed to preserve order and security); see also City of Canton v. Harris, 489 U.S. 378, 388 (1989) (noting a failure to train claim under § 1983 requires a showing of deliberate indifference to a substantial risk of harm). Plaintiff's reliance on labels and conclusions to assert a claim against Warden Mathena cannot overcome Warden's Mathena's motion for summary judgment. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (noting a plaintiff's basis for relief requires more than labels and conclusions). Accordingly, I find Warden Mathena is entitled to qualified immunity and summary judgment for this claim.

## IV.

In addition to the federal claims pursuant to the Eighth Amendment, Plaintiff alleges that Defendants committed negligent acts in violation of Virginia law. After reviewing the record, I find that the claims of negligence against Officer Looney shall proceed to trial and that the other defendants are entitled to summary judgment for the claims of negligence asserted against them.

8

A. Officer Looney

Plaintiff alleges state-law claims of assault, simple negligence, and "willful and wanton" negligence against Officer Looney.[7] Defendants chose not to challenge the merits of these allegations. Instead, they argued that these claims should be dismissed without prejudice, pursuant to 28 U.S.C. § 1367(c). Because I am not dismissing all claims over which I have original jurisdiction, I will not dismiss these state law claims pursuant to § 1367(c) as Defendants request. Inasmuch as Defendants chose not to challenge the merits of the state-law claims, they shall proceed to trial with the federal claim against Officer Looney.

B. Director Clarke, Ombudsmen Robinson and Hinkle, Warden Mathena, Investigator McQueen, and Lt. Still

However, Defendants did challenge the merits of the state law claim of simple negligence alleged against the other defendants. Plaintiff alleges that Director Clarke, Ombudsmen Robinson and Hinkle, Warden Mathena, Investigator McQueen, and Lt. Still negligently failed to investigate Plaintiff's grievances or complaints about Officer Looney's alleged use of excessive force; disregarded inmates' complaints of excessive force at ROSP; and failed to ensure that use of force practices implemented at ROSP are in accordance with VDOC guidelines. These defendants are entitled to summary judgment for these claims because Plaintiff fails to establish these defendants' specific legal duty to Plaintiff to investigate the claims and answer grievances in a way favorable to Plaintiff, a breach of that duty, proximate cause, and Plaintiff's resulting

---

[7] Defendants construed Plaintiff's claim of willful and wanton negligence as gross negligence, but Virginia recognizes three degrees of negligence: simple, gross, and willful and wanton. Cowan v. Hospice Support Care, Inc., 268 Va. 482, 486-87, 603 S.E.2d 916, 918-19 (2004). Willful and wanton negligence means "acting consciously in disregard of another person's rights or acting with reckless indifference to the consequences, with the defendant aware, from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to another." Id., 268 Va. at 487, 603 S.E.2d at 919 (quoting Etherton v. Doe, 268 Va. 209, 213-14, 597 S.E.2d 87, 90 (2004)). Simple negligence "involves the failure to use the degree of care that an ordinarily prudent person would exercise under similar circumstances to avoid injury to another." Id., 268 Va. at 486-87, 603 S.E.2d at 918.

9

injury from grievance responses and investigation that occurred after the incident. See, e.g., Talley v. Danek Med. Inc., 179 F.3d 154, 157 (4th Cir. 1999). Plaintiff's reliance on labels and conclusions to assert such claims against these defendants cannot overcome their motion for summary judgment. See Twombly, 550 U.S. at 555 (noting a plaintiff's basis for relief requires more than labels and conclusions).

V.

For the foregoing reasons, I deny Defendants' motion for summary judgment as to the claims against Officer Looney and grant it as to all other claims against the other defendants. I also deny Plaintiff's motion to amend the summons as moot, and this action shall be reassigned to the docket of the Honorable James P. Jones, United States District Judge of this court, for further proceedings.

ENTER: This 3rd day of ~~October~~ Nov., 2014.

*[signature]*
Senior United States District Judge